NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                                    :
**LIBERTY-LINCOLN MERCURY, INC.,** :
**et al.**                                          :          Civil Action No.  02-cv-4146 (PGS)
                                                    :
          Plaintiff,                                :
                                                    :          **OPINION AND ORDER**
          v.                                        :
                                                    :
**FORD MOTOR COMPANY,**                              :
                                                    :
          Defendant.                                :
_____:

**SHERIDAN, U.S.D.J.**


          Currently before this Court is the Defendant's motion for various legal rulings and Plaintiffs'

motion for summary judgment on damages stemming from the court's findings in *Liberty*

*Lincoln-Mercury Inc. v. Ford Motor Company,* 2006 WL 1098178 (D.N.J. March 31, 2006)

("Liberty IV )[1].  Basically, Ford Motor Company ("Ford") applies a surcharge to the wholesale

automobile price it charges New Jersey dealers ("NJ Surcharge").  Fifty-eight (58) New Jersey Ford

and Lincoln-Mercury automobile dealerships, have sued Defendant  Ford for implementing this

charge alleging that it violated the New Jersey Franchise Practices Act ("NJFPA").  N.J.S.A.

56:10-15(a)  The Hon. William B. Bassler, U.S.D.J. in his decision and order dated March 31, 2006,

_____

          [1]     This is the fourth case filed by Liberty Lincoln Mercury, Inc., regarding warranty
parts reimbursement. The previous cases are as follows: (1) Liberty I:  *Liberty Lincoln Mercury
Inc. v. Ford Mktg., Corp.*, 149 F.R.D. 65 (D.N.J. 1993);  (2) Liberty II:  *Liberty Lincoln Mercury
Inc. v. Ford Mktg., Corp.*, 923 F.Supp. 665 (D.N.J. 1995) *aff'd in part, rev'd in part, vacated in
part,* 134 F.3d 557 (3d Cir. 1998); (3) Liberty III: *Liberty Lincoln Mercury Inc. v. Ford Mktg.
Corp.*, 8 F.Supp.2d 450 (D.N.J. 1998) *rev'd,* 171 F.3d 818 (3d Cir.1999).

granted Plaintiffs' summary judgment motion for the NJFPA claim, and entered a preliminary injunction on July 7, 2006 prohibiting Ford from collecting the surcharge. The preliminary injunction was appealed and is pending in the Third Circuit.

## I.

Judge Bassler's Opinion and Order set forth the facts at length, and they are incorporated as if set forth at length therein. *Liberty II*. 2006 WL 1098178, *1-3.

## II.

As noted above, Defendant filed the Notice of Appeal with the Third Circuit on August 7, 2006, it challenges the district court's grant of a preliminary injunction against further collection of the NJ Surcharge. The district court found that Plaintiffs had established a substantial likelihood of success on the merits, for the reasons set forth in its Opinion and Order dated March 31, 2006. The district court's preliminary injunction grant was premised on its finding that the NJ Surcharge violated N.J.S.A. 56:10-15(a). In appealing the preliminary injunction, Ford by necessity will request the Third Circuit to review the rationale supporting the summary judgment decision.

Generally, the timely filing of a notice of appeal divests the district court of any further authority over those aspects of the case on appeal. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Id.* at 58.; Allan Ides, *The Authority of a Federal District Court to Proceed After Notice of Appeal Has Been Filed*, 143 F.R.D. 307, 309 (1992).

"Ordinarily the scope of appellate review under 28 U.S.C.A. § 1292(a)(1) of an order granting or refusing an injunction is confined to the issues necessary to determine the propriety of

the interlocutory order itself.  Nevertheless, review quite properly extends to all matters inextricably bound up with the remedial decision and the court, if it sees fit, may consider and decide the merits of the case and may order dismissal of the action." 20 Fed. Prac. & Proc. Deskbook §109. Review of Interlocutory Orders.  20 FPP § 109. As a consequence, the Third Circuit, in determining the merits of the preliminary injunction, will most likely consider Judge Bassler's opinion granting summary judgment that Ford violated N.J.S.A. 56:10-15(a).  Although the issue of damages does not squarely implicate the preliminary injunction or  the summary judgment rationale, they are "inextricably bound up in that appeal" and this Court is reticent to make further determinations regarding the measure of damages without the benefit of the Third Circuit opinion. To do otherwise, may lead to piecemeal litigation where inconsistent rulings could result.  Accordingly, the motions for summary judgment are denied.

III.

Although this Court does not believe motions for summary judgment should be entertained at this time, it appears that discovery should continue. The case is nearly six years old and discovery with regard to damage issues has not been undertaken.  With regard to discovery, the court makes certain rulings based upon an informal conference with the parties. They are as follows:

1)      Plaintiffs' motion for summary judgment sought to require an accounting of the funds collected by Ford with regard to the NJ Surcharge for the period of June 1, 2002 until July 7, 2006. At the informal conference, Plaintiffs maintained that Ford possesses business records which clearly set forth the NJ Surcharges collected.  This knowledge is based upon previous litigation.  To this Court, the request for an accounting is a guise for an ordinary discovery request; i.e., a notice to produce documents and should be treated as such.  Accordingly, Plaintiffs may serve such discovery

3

requests regarding the New Jersey Surcharge collected by Ford by October 15, 2007.  Ford shall produce said documents on or before November 15, 2007, and any depositions necessary to explain the documents shall be accomplished by February 1, 2008.

       2)    Defendant sought to depose representatives of the Dealerships with regard to damages. It argues the Dealerships suffered no damages because the Dealerships passed on the NJ Surcharge to consumers. On the other hand, Plaintiffs argue that the NJ Surcharge is a sum certain ($157.00 per vehicle), and they are entitled to recoup that money whether or not it was passed onto the consumer. The Court does not need to address the merits of this issue at this time. Defendant has the right to reasonable discovery requiring Plaintiffs to quantify their actual damages, and the Court does not accept that it should use the Plaintiffs' measure of damages without a fully developed record.

       In addition, there are issues concerning special damages which some Dealerships may have incurred while others have not. At the informal conference, the parties agreed that there is an issue with respect to those Dealerships located on the New York, Delaware, and Pennsylvania border. These Dealerships may have incurred unique damages due to competition from other states where franchise laws are different.  The damages for these particular Dealerships must be quantified. Simultaneous with the discovery allowed in paragraph 1 above, depositions of the representatives of the Dealerships shall be undertaken. Said depositions shall be concluded by February 1, 2008. The Court recognizes that these depositions could become vexatious and cumulative. The parties should confer and agree on a reasonable number of depositions and a schedule to expeditiously take these depositions.

       3)   Similarly, Plaintiffs request an order for an accounting and statutory payment from Ford

for violation of N.J.S.A. 56:10-15(e).  It is premature. Pursuant to N.J.S.A. 56:10-15(e), when a franchisor supplies parts to the dealers (i.e., transmission or engines) for warranty maintenance, the franchisor is obligated to reimburse the dealer in an amount that equals 30% of the retail rate. The 30% of retail rate is based on the fact that Ford incurred the bulk of the cost of this warranty, i.e., the cost of the replacement parts.  Plaintiffs assert, on information and belief, that Ford failed to reimburse dealer at the 30% retail rate.  Significantly, Plaintiffs concede that it does not know to any degree of certainty, whether Ford complied with this provision.  The best means to sort out this issue is through discovery.  Accordingly, discovery with respect to this issue, shall proceed on the same terms as paragraph 1.  Any disputes regarding discovery shall be brought to the attention of Magistrate Judge Salas on an expedited basis.

4)	Trial is scheduled for July 7, 2008 at 10:00 a.m., so long as the Third Circuit has ruled on the appeal.

 s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

September 28, 2007

5